# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JAMES HENDERSON,          )
                          )
      Plaintiff,        )
                          )
  v.                      )   No. 15 C 4445
                          )
ROBERT A. MCDONALD, as Secretary, )
U.S. Department of Veterans Affairs, )
                          )
      Defendant.        )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant's motion for summary judgment. For the reasons stated below, the motion for summary judgment is granted.

## BACKGROUND

Plaintiff James Henderson (Henderson) alleges that he is an African-American male, aged 59. Henderson allegedly began working for the U.S. Department of Veteran Affairs (VA) in 1986. Henderson contends that during his employment with the VA he filed various complaints alleging discrimination in regard to the terms and conditions of his employment. Henderson's most recent position with the Department was allegedly as a Detective with the Hines Veterans Affairs Medical Center Police Department (Hines). Although Henderson technically still holds the

1

position of Detective, in 2012, due to his physical inability to perform his duties, he was relieved of his credentials. His authorization to carry a weapon was rescinded and he no longer performs the type of duties normally performed by a detective. In March 2013, Gary Marsh (Marsh) allegedly assumed the position of Chief of Police at Hines. Marsh allegedly decided to fill a vacant position allotted for a Criminal Investigator and Henderson applied for the position. After an extensive selection process before two panels, Cary Kolbe (Kolbe), a disabled veteran, was allegedly chosen for the Criminal Investigator position. Even though Henderson scored seventh best out of fifteen applicants, Henderson contends that he was not selected for the position because of his race and age, and because he had complained about alleged discrimination in the past. Henderson contends that Kolbe is younger than him, is Caucasian, and has not complained about discrimination in the past.

Henderson includes in his complaint a race discrimination claim brought under Title VII of the Civil Rights Act of 1964 (Title VII) (Count I), an age discrimination claim brought under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.* (Count I), a Title VII retaliation claim (Count II), and an ADEA retaliation claim (Count II). Defendant now moves for summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

**DISCUSSION**

I.  Title VII Discrimination Claim

Defendant moves for summary judgment on the Title VII discrimination claim. A plaintiff who is bringing a Title VII discrimination claim and is seeking to defeat a defendant's motion for summary judgment may proceed under the *Ortiz* reasonable factfinder method or the *McDonnell Douglas* burden-shifting method. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). In *Ortiz*, the Seventh Circuit, recently held that the district courts should no longer employ the

"direct - and -indirect framework," which included the "two tests" that were known as the direct method of proof and indirect method of proof. *Id.* at 765-66 (stating that the direct and indirect methods of proof "complicate[d] matters by forcing parties to consider the same evidence in multiple ways (and sometimes to disregard evidence that does not seem to fit one method rather than the other)"); *see also Cole v. Board of Trustees of Northern Illinois University*, 838 F.3d 888, 899 (7th Cir. 2016)(stating that the court must "look past the ossified direct/indirect paradigm"). The Seventh Circuit, however, also indicated that it was not barring a plaintiff from proceeding under the *McDonnell Douglas* burden-shifting method, which was commonly referred to in the past as the indirect method of proof. *Ortiz*, 834 F.3d at 766.

### A. *Ortiz* Reasonable Factfinder Method

Henderson argues that he can defeat Defendant's motion under the *Ortiz* reasonable factfinder method. The Seventh Circuit held that a plaintiff can defeat a defendant's motion for summary judgment under the *Ortiz* reasonable factfinder method by pointing to sufficient evidence to show that a reasonable factfinder could "conclude that the plaintiff's [protected characteristic] caused the . . . adverse employment action." *Ortiz*, 834 F.3d at 765 (stating that "[e]vidence must be considered as a whole"); *Cole*, 838 F.3d at 899 (stating that "the critical question . . . is simply whether a reasonable jury could infer prohibited discrimination")(internal quotations omitted)(quoting *Perez v. Thorntons, Inc.*, 731 F.3d 699, 703 (7th Cir. 2013)).

4

Defendant argues that the Criminal Investigator position was selected pursuant to a neutral selection process and that there is no evidence that the selection was based upon Henderson's race. It is undisputed that the VA convened two panels for the selection process. (RSF Par. 16-17). Although Henderson responds to these facts and other facts in his response to Defendant's statement of material facts by stating that they are "Denied," Henderson fails to cite to evidence that supports the denials and instead offers additional arguments regarding the facts in an effort to diminish their relevancy. (RSF Par. 16-17). Henderson has, for example, no evidence showing that the VA did not convene the panels. Henderson acknowledges the panels in his own filings. Yet he responds to such facts with "denied" rather than "admitted" or "admitted in part." Pursuant to Local Rule 56.1, when such an evasive response without a citation to facts to support such a denial is presented, the facts are deemed to be undisputed.

It is undisputed that under the selection process the first panel would review the applicants' resumes and select the best ones based on a predetermined scoring system, and that the second panel would interview the applicants whose resumes had been selected by the first panel. (RSF Par. 16-17, 22-24). It is further undisputed that efforts were made to conceal the identities of applicants by redacting names on the resumes. (RSF Par. 25). It is further undisputed that Henderson's resume score was seventh out of the fifteen resumes that were received and thus he was not one of the candidates that progressed to the interview stage. (RSF Par. 60).

Henderson contends that Marsh did not select him for the Criminal Investigator position because of Henderson's race. Henderson presents a variety of evidence regarding other employees and other matters not connected to Henderson in an attempt to paint Marsh as someone who generally discriminated against African-Americans. Henderson's evidence falls short of being sufficient to show such animus to a reasonable trier of fact. Even if Henderson had been able to present such evidence, it is undisputed that Henderson's name was not before Marsh for consideration during the final stage of the selection process. (RSF Par. 63-64). It is undisputed that Marsh made the final selection, but did so only from the remaining pool of applicants that were presented to him from the list of applicants. (RSF Par. 63-64). It is also undisputed that according to the scoring in the selection process, Kolbe had the highest score of all the applicants. (RSF Par. 63).

Henderson does not point to evidence showing that any of the panel members knowingly sought to discriminate against him unlawfully or sought to identify Henderson's anonymous application in order to prejudice him. Nor can Henderson proceed to trial in the absence of such evidence and ask the trier of fact to merely speculate as to such matters. *See Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1077 (7th Cir. 2016)(reiterating that "summary judgment is the 'put up or shut up' moment in a lawsuit")(quoting *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010)). It is undisputed that at least one of the three finalists that proceeded to the second stage of the selection process and was part of the pool considered by Marsh was an African-American. (RSF Par. 61-62).

Henderson contends that the selection process was a sham because the VA had certain preconceived notions as to the appropriate candidates, which he contends would have effectively limited the applicant pool to himself and Kolbe. According to Henderson, the VA cancelled the certificates for the Criminal Investigator position prior to a merit promotion being made so that no selection was made off of the Job Vacancy Announcement for Criminal Investigator. Henderson contends that the VA intended the Criminal Investigator position to be filed by a current Hines employee. (RSF Par. 17). In support of his position, Henderson cites to the deposition testimony of Brian Cross (Cross), an email from Cross, and a position checklist. (RSF Par. 170). However, the declaration provided by Cross and the other documentary evidence in this case clearly shows that outside candidates were considered and that the position checklist did not control in any way the scope of the candidates. For example, in the email from Cross himself, which is cited by Henderson, Cross specifically stated that the VA would accept applications from disabled veterans "outside" of Hines. (P Ex. 24). The fact that outside candidates were considered is further illustrated by the fact that two of the three finalists during the selection process were from outside the VA. (D Ex. 15, 16). Henderson has not pointed to sufficient evidence for a reasonable trier of fact to conclude that the candidates were limited to current employees at Hines.

Henderson also argues that the VA had decided only to consider applicants on the G-11 certificate. (RSF Par. 17). However, it is undisputed that in the job announcement for the Criminal Investigator position the position was graded at and

7

announced at the GS-9 level, with promotion potential up to the GS-11 level. (RSF Par. 15). The undisputed record shows that the position was rated to be filled at either the GS-9 level or GS-11 level and that certificates were issued for both levels for both outside and internal candidates. (RSF Par. 15). Henderson cites to deposition testimony of Marsh to show that only a GS-11 certificate would suffice for the position. (RSF Par. 17). Marsh, however, merely testified that if he had a candidate before him at the GS-11 level he would select that candidate. (Marsh Dep. 46-47). Marsh did not state that lower level candidates would not be considered or that he would refuse to select an applicant if presented with a pool of candidates that did not contain a GS-11 level candidate. Nor has Henderson shown that Kolbe or other candidates were ineligible for promotion to GS-11 level if chosen.

Henderson also argues that the job posting and selection process are irrelevant because Kolbe's promotion was ultimately processed under the Veterans Recruitment Appointment (VRA). Henderson contends that Defendant had previously indicated that Kolbe had been promoted via a merit promotion procedure. However, the appointment authority used for Kolbe has no connection to the motive for his promotion, which is the issue before this court, not the administrative means to carry out the promotion. Nor does the administrative means of the promotion call into question the neutrality of the selection process. Marsh in fact testified consistently that he was merely concerned with picking the best candidate and was not concerned with the means that the Human Resources Department used to effectuate the promotion. (Marsh Dep. 17).

8

Henderson also contends that some of the panel that reviewed the resumes might have recognized his resume. However, it is undisputed that the only panel member who indicated that she thought that she recognized Henderson's resume actually gave him the highest score of any of the three panelists. (RSF Par. 26, 28, 29, 30, 36, 40). Thus, there is no indication by such evidence that Henderson was somehow prejudiced by recognition during the selection process. If anything, such evidence would imply that Henderson could have been unfairly benefitted by recognition. Henderson also contends that a few panel members may have recognized Kolbe's resume. However, the undisputed facts do not indicate that Henderson lost the position to Kolbe. Even if Kolbe was not selected, there were five other applicants who scored better than Henderson and there is no reasonable justification for Henderson's belief that he was somehow the prime candidate in Kolbe's absence. Henderson is bringing the instant action on his own behalf, not on behalf of other applicants.

Henderson also contends that there were shifting explanations for the decision not to select him. However, the undisputed facts clearly show that he participated in the neutral selection process with two panels making determinations and nothing in the record shows an inconsistency in the selection process or in the ultimate choice of Kolbe who had the highest score. Henderson did not simply lose the position to Kolbe. The undisputed facts show that he was not even the sixth best candidate based on the scoring system in place before resumes were submitted. Henderson contends that the VA changed its position as to the means of Kolbe's promotion.

Such an argument fails to address the primary pertinent issue, which is why Henderson was not advanced passed the first stage of the selection process.

Henderson also makes a variety of arguments as to why he believes he was more qualified than Kolbe. Henderson highlights what he believes are his strong points in his experience and resume and criticizes Kolbe for what Henderson perceives as the weaknesses in Kolbe's experience and resume. This action, however, is not a venue that affords Henderson the opportunity to have the selection process second-guessed and to show a wiser choice would have been him. *See Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 895 (7th Cir. 2016)(stating that a "court is not a super personnel department that second-guesses employers' business judgments")(internal quotations omitted)(quoting *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002)). There is no evidence in the record that would indicate Henderson was any more qualified for the position than Kolbe based on a consideration of all the pertinent factors. In fact the undisputed facts show that the panel and Marsh had ample justification for selecting Kolbe. Although Henderson indicates that he would have chosen differently, Henderson must point to evidence of intentional discrimination based on race rather than evidence that he believes shows that Defendant made an unwise decision. Thus, Henderson cannot defeat Defendant's motion for summary judgment on the Title VII discrimination claim under the *Ortiz* reasonable factfinder method.

  B. *McDonnell Douglas* Burden-Shifting Method

Henderson also argues that he can proceed under the *McDonnell Douglas* burden-shifting method. Under that method, for a failure-to-promote claim, a plaintiff must first establish a *prima facie* case by showing: (1) that he "was a member of a protected class," (2) that he "applied for and was qualified for the position sought," (3) that he "was rejected for the position," and (4) that "the employer promoted someone outside the protected group who was not better qualified than the plaintiff." *Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 733 F.3d 722, 728-29 (7th Cir. 2013). If the plaintiff establishes a *prima facie* case, "the burden shifts to [the employer] to give a legitimate, nondiscriminatory reason for" its actions, and if such a reason is given, "the burden shifts back to [the plaintiff] to offer evidence that [the employer's] reason is mere pretext for unlawful discrimination." *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 342 (7th Cir. 2016).

Defendant argues that even if Henderson could establish a *prima facie* case, Henderson cannot show that the reason given for not choosing him for the Criminal Investigator position was a pretext. As indicated above, the undisputed facts indicate that an extensive selection process was used that included two separate panels in order to arrive at a selection for the Criminal Investigator position. The undisputed facts further show that although Henderson claims Marsh harbored an animus against him because of his race, Henderson was eliminated from the selection process before Marsh made the final selection. Defendant has presented ample evidence that has not been contradicted by Henderson indicating that the panel members all acted in

11

good faith in scoring the applicants during the selection process. Marsh ultimately chose the applicant who was scored the highest by the panel members. Therefore, Defendant's motion for summary judgment on the Title VII discrimination claim is granted.

III. ADEA Discrimination Claim

Defendant moves for summary judgment on the ADEA discrimination claim. A plaintiff who is bringing an ADEA discrimination claim and is seeking to defeat a defendant's motion for summary judgment may generally proceed under the same standards applied to Title VII claims. *See Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 n.3 (7th Cir. 2009)(stating that the court "appl[ies] the same analytical framework to employment discrimination cases whether they are brought under the ADEA or Title VII"); *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006)(providing that ADEA claims were subject to the same standards that were in effect at that time for Title VII claims). In the ADEA context, for the similarly-situated employee requirement for the *McDonnell Douglas* burden-shifting method, a plaintiff must show that "similarly situated, substantially younger employees were treated more favorably." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 609 (7th Cir. 2012)(quoting *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771-72 (7th Cir. 2002)).

Henderson points to no evidence in regard to any animus against him because of his age that would warrant any different result than the claims based on his race. Although he claims that Kolbe is younger than him, he has failed to point to

12

sufficient evidence to show that the extensive selection process involved any unlawful discrimination.  Henderson has not pointed to sufficient evidence to defeat Defendant's motion under the *Ortiz* reasonable factfinder method.  In regard to the *McDonnell-Douglas* burden-shifting method, Henderson has again failed to point to sufficient evidence to show that the reason given for not selecting him for the Criminal Investigator position was a pretext. Therefore, Defendant's motion for summary judgment on the ADEA discrimination claim is granted.

IV.  Retaliation Claims

Defendant moves for summary judgment on the retaliation claims.  As indicated above, the undisputed facts show that there is not sufficient evidence that would indicate other than that the selection process was other than a neutral process without any unlawful prejudice.  Although Henderson claims that Marsh had prior knowledge of Henderson's earlier complaints of discrimination, Henderson has not pointed to evidence that any of the panel members who determined that Henderson should not proceed further in the selection process were aware of the prior complaints.  Henderson has not pointed to sufficient evidence to defeat Defendant's motion for summary judgment on the retaliation claims under either the *Ortiz* reasonable factfinder method or the *McDonnell Douglas* burden-shifting method. Therefore, Defendants' motion to dismiss the retaliation claims is granted.

The court also notes that Henderson has filed a motion for sanctions, which this court indicated that it would deem a sur-reply in this matter. Henderson has not shown that sanctions are warranted in this matter.

## CONCLUSION

Based on the foregoing analysis, Defendant's motion for summary judgment is granted.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: December 14, 2016