IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES HENDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15 C 4445 |
| v. ) | |
| ) | Magistrate Judge Sidney I. Schenkier |
| ROBERT A. WILKIE, Secretary, ) | |
| U.S. Department of Veterans Affairs, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER[1]

Between September 24 and September 27, 2018, this Court presided over a jury trial between plaintiff James Henderson and defendant Robert Wilkie, on behalf of the U.S. Department of Veterans Affairs. Mr. Henderson, who is African-American, alleged that defendant discriminated against him because of his race by failing to promote him to the position of Criminal Investigator at the Hines Veterans Administration Medical Center ("Hines") in May 2014; instead, Chief Gary Marsh selected Cary Kolbe, who is white. At the end of the trial, the jury returned a verdict in favor of defendant.

Plaintiff has filed a motion for a new trial pursuant to Fed. R. Civ. P. 59(a), arguing that the Court erred when it granted two of defendant's motions *in limine* prior to trial (doc. # 98). Defendant has filed a bill of costs seeking $4,060.42 (doc. # 96). For the following reasons, we deny plaintiff's motion, and award defendant his requested costs.

---

[1] On March 15, 2018, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 67).

# I.

The motions *in limine* at issue here concern the scope of the evidence that plaintiff was permitted to present at trial. Defendant's Motion *in Limine* No. 1 requested that the Court bar testimony of certain witnesses "because they were not disclosed in answers to pertinent interrogatories as having relevant information; they lack relevant testimony; and the probative value of any testimony would be outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence" (doc. #74: Proposed Final Pretrial Order, at 9). Motion *in Limine* No. 5 sought to bar "any evidence regarding events post-dating the selection process, including but not limited to subsequent promotions or discipline issued to Kolbe or Marsh" (*Id.* at 10).

The Court heard argument on the motions at a final pretrial conference on August 10, 2018. In opposing Motion *in Limine* No. 5, plaintiff explained that he wished to present evidence of hiring and promotion decisions that Chief Marsh oversaw after Mr. Kolbe's promotion, to support plaintiff's contention that Mr. Henderson was not promoted to the Criminal Investigator position because Chief Marsh harbored animus towards African-Americans (doc. # 101: Def. Mem. in Opp. to Mot., Exh. A). Specifically, plaintiff wished to present testimony from individuals who had filed their own discrimination lawsuits against defendant to bolster his claim that Chief Marsh wanted to establish a "hierarchy based on race" (*Id.*). Plaintiff also wished to present evidence that Mr. Kolbe was the subject of discipline and was accused of sexual harassment and other negative behaviors not only before the May 2014 promotion decision, but also thereafter. Among other reasons, plaintiff intended this evidence to show that Chief Marsh treated Mr. Kolbe more leniently than he did an African-American employee who was accused of sexual harassment in 2016 (doc. # 98: Pl. Mem. in Support of New Trial at 8; Def. Mem. in Opp., Exh. A (8/10/18 Tr.) at 30).

The Court granted Motion *in Limine* No. 5, barring plaintiff from presenting certain evidence concerning "post event statements or conduct" regarding other promotion decisions overseen by Chief Marsh. The Court did not bar plaintiff from presenting evidence concerning promotion or other employment decisions that pre-dated Mr. Kolbe's selection (Def. Mem. in Opp., Exh. A (8/10/18 Tr.) at 32-33).

Defendant's Motion *in Limine* No. 1 was directed to plaintiff's plan to call witnesses to testify about matters not disclosed in plaintiff's interrogatory responses. Plaintiff stated that he wished to ask some witnesses about their own EEO complaints against defendant, presumably as evidence of defendant's (and more specifically Chief Marsh's) alleged animus against African-Americans. The Court entered and continued Motion *in Limine* No. 1 to allow the parties time to meet and confer about defendant's objections to the witness list. With respect to Motion *in Limine* No. 1, the Court also ordered plaintiff to serve a revised witness list which eliminated those individuals he did not intend to call at trial. For those witnesses whom he did intend to call, plaintiff was ordered to identify the witnesses he proposed to question on matters beyond those disclosed in his interrogatory responses and to provide a reason why he should be allowed to do so (*Id.* at 42, 50-51).

The parties participated in a reconvened final pretrial conference on August 27, 2018. At that conference, the Court heard additional argument on defendant's Motion *in Limine* No. 1, particularly with respect to seven witnesses still in dispute: Michael Leonard, David Scott, Donald Barnes, Thomas Johnson, James Runge, Larry Bailey and Nina Graves (doc. # 78: 08/27/18 Order).[2] Each of these witnesses was identified in plaintiff's October 2015 response to defendant's

---

[2] Prior to the second pretrial conference, plaintiff trimmed his witness list from 34 to 22 names, and defendant continued to object to 10 of them. The Court overruled defendant's objection to two of the witnesses – Myron Thomas and Cheryl Thomas – because although they had not been named in an interrogatory response, they were the subject of several exhibits shown to Chief Marsh during his deposition, and the scope of their potential testimony was

3

Interrogatory No. 2 as having a similar body of relevant information about the case.[3] For example, in his response, plaintiff identified Hines Deputy Chief James Runge as having the following knowledge:

> Aware that Plaintiff is more qualified than Selectee, aware Selectee threatened to kill the former Criminal Investigator and only received an admonishment, aware of Selectee's problems with other employees, aware Selectee violated weapon's policy, aware Selectee was found to have suborned false testimony, aware that Selectee came to work intoxicated (Def. Mem. in Opp., Exh. D).

While the exact wording of the knowledge held by the other witnesses at issue differed slightly, the remaining six disputed witnesses were all identified as having similar (albeit lesser) information pertaining to plaintiff's qualifications *vis a vis* that of Mr. Kolbe, and knowledge of the same information regarding Mr. Kolbe's behavior (*Id.*). During discovery, none of the witnesses were identified in plaintiff's interrogatory responses or otherwise as having knowledge of other matters about which plaintiff sought to have them testify at trial.

Because plaintiff was not prepared to explain why he should be able to elicit from these witnesses testimony on matters not disclosed in discovery, we deferred ruling on the scope of the testimony of these seven witnesses until trial (Def. Mem. in Opp., Exh. B (08/27/18 Tr.) at 49). During trial, plaintiff called as witnesses three of these seven individuals: Mr. Leonard, Mr. Scott and Mr. Johnson. Plaintiff did not call the other four individuals to testify. In addition, as to Messers. Leonard, Scott and Johnson, plaintiff made no offer of proof as to what testimony they would offer beyond that disclosed in the interrogatory answers; nor did plaintiff give an

---

disclosed to defendants in that way. *See,* Fed. R. Civ. P. 26(e)(a)(A) (supplementation may be accomplished by making additional information "known to the other parties through the discovery process"). Plaintiff acknowledged that a third individual, Gladys Hines, should have been disclosed in a supplement to Rule 26 but was not, and the Court sustained the motion *in limine* to bar her testimony.

[3] Defendant's Interrogatory 2 asked plaintiff to "identify all persons with knowledge or information relating to any claim or defense in this action, and describe in detail each person's knowledge."

4

explanation for why he should be allowed to offer testimony by these witnesses on matters not disclosed in discovery.

## II.

Plaintiff argues that he was denied a fair trial because the Court's rulings on defendant's Motions *in Limine* Nos. 1 and 5 "prevented Plaintiff from presenting to the jury the vast majority of circumstantial evidence showing that the selecting official, former Police Chief Gary Marsh, was motivated by racial bias in his failure to promote Plaintiff to the Criminal Investigator position in May 2014" (Pl. Mot. at 3). Plaintiff also contends that defendant waived his right to bar or limit plaintiff's presentation of evidence by failing to raise the arguments presented in his motions *in limine* at an earlier time (*Id.*). We conclude that plaintiff's arguments provide no sound basis to overturn the jury's verdict.

A court may grant a motion for a new trial if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party. Fed. R. Civ. P. 59(a)(1)(A). However, the grant of a new trial is not to be done lightly. *Rasic v. City of Northlake*, No. 08 C 104, 2010 WL 3365918, at *6 (N.D.Ill. Aug. 24, 2010). Where a jury has reached a verdict, that verdict "will be set aside as contrary to the manifest weight of the evidence only if 'no rational jury' could have rendered the verdict." *Moore ex rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 427 (7th Cir. 2008) (*citing King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006)).

Plaintiff offers no argument that the verdict for defendant was against the manifest weight of the evidence. Rather, plaintiff argues that the Court's decision to grant defendant's Motions *in Limine* Nos. 1 and 5 made the trial "patently unfair as a matter of law" (Pl. Mot. at 4). Plaintiff presents three arguments in support of his contention that the trial was unfair. *First*, he says that the Court's blanket exclusion of post-event evidence was arbitrary; *second*, he contends that

defendant's decision not to depose plaintiff's witnesses should not bar plaintiff from being able to present evidence beyond his interrogatory answers; and *third*, he argues that defendant waived its objections to the evidence by not raising them in a timely manner. Although there is some overlap, plaintiff's first argument generally concerns Motion *in Limine* No. 5 and the second concerns Motion *in Limine* No. 1. We address each argument in turn.

### A.

A trial court has broad discretion with respect to the admissibility of evidence. *Houlihan v. City of Chicago,* 871 F.3d 540, 553 (7th Cir. 2017). Under Federal Rule of Evidence 403, a court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." As we explain below, even if we were to assume the relevance of some of the evidence barred by Motion *in Limine* No. 5, plaintiff fails to overcome our determination that the information was properly barred because of multiple Rule 403 concerns.

The crux of plaintiff's argument is that the Court's ruling on Motion *in Limine* No. 5 amounted to an arbitrary blanket exclusion of all post-event evidence, which constitutes a "manifest error" requiring a new trial (Pl. Mot. at 4, 7). Unstated is the proposition that, had we allowed plaintiff to present this evidence, the jury might have arrived at a different verdict. We disagree. The post-promotion evidence falls into two categories: evidence of Mr. Kolbe's own behavior, and evidence regarding other employees' promotion and employment decisions overseen by Chief Marsh after Mr. Kolbe's promotion. Plaintiff does not seek to revisit the Court's decision to bar evidence of Mr. Kolbe's own post-promotion conduct, and thus we will focus on

Motion *in Limine* No. 5 as it relates to our decision to bar certain post-event evidence concerning Chief Marsh.

In support of his argument, plaintiff relies primarily on *Riordan v. Kempiners*, 831 F.2d 690 (7th Cir. 1987). The plaintiff in *Riordan* was a female supervisor at the Illinois Department of Public Health. After a reorganization of her department (initiated by plaintiff) and a subsequent change in the way merit increases were awarded (a change that was implemented by the State of Illinois across the board), plaintiff ended up being paid less than two of her male subordinates. She requested a one-time special salary adjustment, which was approved both by her immediate (male) supervisor and then by his immediate (male) supervisor; a female supervisor at a still higher level then refused to approve plaintiff's salary increase.

Prior to issuing a directed verdict in favor of defendant, the trial court granted a number of motions *in limine*, which collectively barred plaintiff from presenting at trial various circumstantial evidence that the female supervisor's decision to deny plaintiff a merit increase was based on plaintiff's sex. One of those motions that the trial court granted excluded "all evidence of events subsequent to [plaintiff's] filing of her claim for discrimination in December 1983 – even though she didn't quit the Department until August 1984." *Riordan*, 831 F.2d at 698. The Seventh Circuit decision does not describe what this evidence included or whether it pertained specifically to plaintiff or not; it also does not reveal the trial court's reason for barring it. In holding that the trial court wrongly excluded this evidence, the Seventh Circuit stated that, "[p]roximity in time to the alleged discrimination is a proper consideration in assessing probative value; but given the importance of circumstantial evidence in proving (and, equally, disproving) employment discrimination, a blanket exclusion of evidence of events that occurred before or after the discrimination is arbitrary." 831 F.2d at 698-99.

The *Riordan* case does not convince us that a judicial decision to bar post-promotion evidence *per se* constitutes any error, much less one requiring a new trial. The *Riordan* case presented radically different facts than the instant action, and the trial court there barred not only post-event evidence, but also a number of other types of evidence that the Seventh Circuit found to be relevant to the plaintiff's discrimination claim. In contrast, this Court barred only information about events that post-dated Mr. Kolbe's selection. We did not bar evidence of employment actions, lawsuits, complaints of discrimination or other conduct relevant to Chief Marsh's alleged animus (or Mr. Kolbe's conduct) that pre-dated Mr. Kolbe's promotion, even if such actions continued after the promotion decision.

As we noted during the final pretrial conference, evidence that could support an inference of racially discriminatory animus by Chief Marsh was not limited to the circumstances of Mr. Kolbe's specific promotion decision (Def. Mem., Exh. A (08/10/18 Tr.) at 18). That is why we rejected defendant's Motion *in Limine* No. 2, which sought to bar all evidence of other employment decisions at the VA; in so doing, the Court noted that any blanket attempt by defendant to confine the evidence to the "four corners of this particular decision" was misguided (*Id.*). Accordingly, the Court made clear that it would not categorically bar circumstantial or other evidence to the extent that it might bear on animus by Chief Marsh (*Id.* at 20).

And indeed, at trial plaintiff offered testimony by a number of witnesses concerning events prior to Mr. Kolbe's promotion that sought to establish Chief Marsh's racial bias. For example, plaintiff presented testimony from witnesses Cheryl and Myron Thomas, describing an instance where Chief Marsh was informed of negative behavior by Mr. Kolbe directed toward Ms. Thomas (who is African-American) but took no action and still allowed Mr. Kolbe to pursue the promotion. Officer Donald Barnes, a Hines VA employee, testified that Chief Marsh told him that he wanted

to keep the hiring at Hines racially balanced when he rejected Officer Barnes' request to put an African-American officer on his shift (Pl. Mot. at 10).

Plaintiff also offered evidence of Chief Marsh's alleged failure to take action concerning accusations of sexual harassment by another VA employee, Sheirys Bredemeier, and that Chief Marsh pursued only a cursory investigation into Ms. Bredemeier's accusations before determining that the allegations were unfounded. Plaintiff offered evidence that this reflected racial bias because when an African-American Hines officer was accused of sexual harassment (by a different employee), Chief Marsh removed that officer's badge and gun during the pendency of the investigation (Pl. Mot. at 9).

To the extent that plaintiff had additional, post-promotion evidence to offer on the issue of Chief Marsh's alleged racial animus, we are satisfied that any slight probative value it may have had did not warrant its admission. At the threshold, plaintiff made no offer of proof prior to trial (or at trial) to show that the post-promotion evidence he sought to offer was relevant. Plaintiff offered no details to show the specifics of any post-promotion processes or Chief Marsh's specific involvement in them, for example, to explain the basis for relevance.

Moreover, the post-promotion decisions about which plaintiff sought to elicit testimony all involved lawsuits by African-American employees alleging race discrimination that were pending but not decided. As the Court explained at the final pre-trial conference, there is no way to know in advance which of these lawsuits might be found to have merit (and thus could provide evidence of animus by Chief Marsh) and which might be found to reflect legitimate employment decisions (Def. Mem., Exh. A (08/10/18 Tr.) at 29). The likelihood of jury confusion and the need to conduct a "trial within a trial" on each allegation was considerable, and thus, it was appropriate to exclude this evidence pursuant to Rule 403. *Filar v. Chicago School Reform Bd. of Trustees*, No. 09-2489,

2010 WL 1872711 at *2 (7th Cir. May 10, 2010) (evidence of plaintiff's previously successful grievance properly omitted from current discrimination lawsuit because it would have required "mini trial" and thus had likelihood of confusing the jury in violation of Rule 403).

Finally, in light of the evidence of racial animus offered, testimony about post-promotion actions by Chief Marsh would have been cumulative. *See, e.g., Kunz v. DeFelice,* 538 F.3d. 667, 674-75 (7th Cir. 2008) (evidence of plaintiff's retail theft conviction properly excluded as cumulative in civil rights case when defendant had already presented evidence of other burglary convictions). The challenge for plaintiff was not in being able (or allowed) to marshal evidence of bias by Chief Marsh, but instead, for the reasons we explain in Section C, below, his inability to show that any such bias dropped to the bottom line of the decision to promote Mr. Kolbe and not plaintiff.

**B.**

We now turn to plaintiff's challenge to our ruling as to Motion *in Limine* No. 1. *First,* contrary to plaintiff's contention, defendant did not waive his right to object to plaintiff's attempt to expand his interrogatory answers, because defendant is not objecting to the content of plaintiff's answers as originally given. Defendant fully accepts plaintiff's characterization of the knowledge held by the individuals listed in plaintiff's answer to defendant's Interrogatory No. 2. Rather, defendant's Motion *in Limine* No. 1 properly objects to plaintiff's attempts to expand his earlier answers by adding new topics and areas of knowledge not previously revealed. Defendant was entitled to rely on plaintiff's answers to defendant's interrogatories as given, and to make his decision not to depose certain witnesses based on the representation that they possessed the knowledge plaintiff described and nothing more.

*Second*, pursuant to Fed. R. Civ. P. 26(e), a party has a duty to supplement previous discovery responses if it learns that its previous responses are incomplete or incorrect, unless the information is otherwise communicated to the other party "during the discovery process." In this case, plaintiff offered no evidence that during discovery he ever identified the witnesses at issue as having any knowledge about Chief Marsh's alleged racial bias. Defendant made a strategic decision not to depose these witnesses because he reasonably relied on plaintiff's representation that the scope of the individuals' knowledge concerned Mr. Henderson's qualifications for promotion compared to Mr. Kolbe.

*Third*, plaintiff suggests in his motion for a new trial that he did in fact reveal information outside the scope of his interrogatory answers when he filed his statement of material facts in response to defendant's motion for summary judgment (Pl. Mot. at 14). However, providing information during a summary judgment proceeding, well after discovery has closed, does not meet the requirement of Rule 26(e) that supplementation takes place "during the discovery process." During the August 27 hearing – consistent with the language of Rule 26(e) – the Court specifically explained to plaintiff that disclosure of information in a summary judgment motion "is not an antidote for failing to do it during discovery" (Def. Opp., Exh. B (08/27/18 Tr.) at 45).

Plaintiff nonetheless argues that defendant then had the obligation to ask the Court to reopen discovery once defendant saw the statement of material facts, so that it could investigate the new information contained in it. We disagree. It was not the responsibility of defendant to cure plaintiff's non-compliance with Rule 26(e) by seeking to reopen discovery to pursue information that plaintiff should have disclosed much earlier. To the contrary, as the Court made clear, the onus was on plaintiff to provide some good reason why he should be allowed to elicit testimony of witnesses on subjects not disclosed in plaintiff's sworn interrogatory responses (Def. Opp., Exh.

B (08/27/18 Tr.) at 44-46). Plaintiff never accepted that challenge. He cannot now complain of error – much less error warranting a new trial – by being held to his sworn interrogatory responses.

## C.

Finally, we note that while a party is entitled to a fair trial, he cannot demand a perfect one. *Lemons v. Skidmore*, 985 F.2d 354 (7th Cir. 1993). In this case, the exclusion of evidence pursuant to defendant's Motions *in Limine* Nos. 1 and 5 did not lead to an unfair trial.

Even without the evidence that was excluded, plaintiff presented ample evidence at trial that could allow a jury to conclude that Chief Marsh harbored discriminatory animus and that Mr. Kolbe was not the most qualified candidate (or was not qualified at all) for the Criminal Investigator position. However, proof of racial bias on the part of Chief Marsh was not alone sufficient to prove a case of discrimination, as plaintiff suggests. Jury Instruction 13 – which plaintiff does not challenge in his motion – states in relevant part:

> To succeed on this claim, Plaintiff must prove by a preponderance of the evidence that he was not promoted by Chief Marsh because of his race. To determine that Plaintiff was not promoted because of his race, you must decide that Defendant would have promoted Plaintiff to the position of Criminal Investigator had he not been African-American but everything else had been the same.

Thus, plaintiff had to persuade the jury that he would have been selected for the position "but for" his race.

The evidence showed that a screening panel that was selected by Chief Marsh, but on which he did not sit, reviewed the applications of those persons seeking the Criminal Investigator position, and scored Mr. Henderson tenth among the applicants; the panel rated Mr. Kolbe as the top applicant, followed by an African-American candidate. And, the applicants rated third through ninth included both white and African-American candidates. Only the top three candidates among all of the applicants proceeded to the next step, an interview before another panel that again was

12

selected by Chief Marsh but on which he did not sit. That panel rated Mr. Kolbe as the top candidate, followed by an African-American candidate.

On this evidence, the jury was well within its province to conclude that Mr. Henderson had failed to meet his burden of proof under Instruction No. 13 – and plaintiff does not argue otherwise. Plaintiff fails to show how the exclusion of post-promotion evidence concerning Chief Marsh would have aided his effort to prove that any animus by Chief Marsh was the "but for" reason he did not get the promotion, when he was ranked behind nine other white and African-American candidates.

Plaintiff also offered evidence designed to show that the process used by defendant to review applications and to interview candidates was irrational, flawed and unfair. Plaintiff does not allege that he was deprived of the ability to develop evidence on that point. But, plaintiff failed to persuade the jury that this evidence proved discrimination in the promotion decision in the face of Instruction No. 14 (which also is not challenged here), which told the jury that in deciding the plaintiff's case, "you should not concern yourselves with whether defendant's actions were wise, reasonable, or fair." Again, plaintiff has not shown how the inclusion of post-promotion evidence could have aided him in overcoming this hurdle.

### III.

In light of the jury's decision, defendant filed a bill of costs, asking to be reimbursed a total of $4,060.42 (doc. # 96). Of this amount, $2,664.53 is for fees for printed transcripts "necessarily obtained for use in this case" (*Id.* at 1), and $1,395.89 is for fees connected with making Chief Marsh available to testify at his deposition and at trial (*Id.*). Plaintiff did not file an objection to the bill of costs.

Pursuant to Fed. R. Civ. P. 54(d), the prevailing party at trial is entitled to recover its costs, subject to the limitations that the costs imposed on the losing party are both recoverable and reasonable. *Cooper v. City of Chicago*, No. 16 C 3519, 2018 WL 3970141 at *10 (N.D.Ill., August 8, 2018). For the purpose of this decision, recoverable costs include: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; and (3) fees and disbursements for printing and witnesses. 28 U.S.C. § 1920. "There is a strong presumption favoring the award of costs to the prevailing party." *Id.* After the prevailing party upholds its burden of demonstrating the amount of its recoverable costs, the losing party then "bears the burden of affirmatively showing that the taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005).

After reviewing the bill of costs and attached exhibits, and considering the plaintiff's lack of objection, we agree that the costs requested are both recoverable (copies of transcripts and witness fees) and reasonable. Defendant seeks to recover only specific portions of transcripts from eight different depositions and parts of the two pre-trial conferences in August 2018. All of the transcripts were from the depositions of witnesses who eventually testified at trial, and the pre-trial conferences related to matters relevant to the trial itself. *Trading Technologies Intern., Inc. v. eSpeed, Inc.*, 750 F.Supp.2d 962, 975 (N.D.Ill., 2010) (*Schenkier, J.*) (costs for depositions reasonably necessary where they were used extensively in case and losing party did not object to number of depositions taken or argue that any particular deposition was unreasonable). Similarly, we find the costs for bringing Gary Marsh to testify at trial were reasonable, given his central role in the case, and plaintiff's lack of objection to the hotel rate, per diem, or mileage amounts defendant requests. We find that a hotel rate of approximately $200.00 per night is reasonable for lodging in downtown Chicago. *See Hillman v. City of Chicago*, 04 C 6671, 2017 WL 3521098 *10

(N.D.Ill., August 16, 2017) (witness fees of $662.99 reasonable for airfare between Washington D.C. and Chicago plus one night hotel lodging and food).

## CONCLUSION

For the foregoing reasons, we deny plaintiff's motion for a new trial (doc. # 98), and award defendant costs in the amount of $4,060.42 (doc. # 96).

**ENTER:**

_____
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATED: January 29, 2019**